No. 22,392.

THE COMMONWEALTH OIL COMPANY, *Appellant,* v. THE NEO-SHO OIL, GAS & REFINING COMPANY et al., *Appellees.*

SYLLABUS BY THE COURT.

1. SALE OF OIL LEASES—*Fraudulent Representations by Seller—Action by Purchaser to Cancel Contract—Amendment of Pleadings—Abuse of Judicial Discretion.* To answers containing allegations of new matter as a basis for affirmative relief, replies were filed denying every material allegation contained in the answers, "except such as are consistent with the allegations of the plaintiff's amended petition." At the trial evidence was introduced in support of the answers. After submission, but before decision of the cause, leave to amend the replies, to conform to the theory on which the case was tried, by making them general instead of qualified denials, was asked, and refused. The court returned findings of fact based on the pleadings and the evidence. One of them was that the affirmative allegations of the answers were true, and judgment was rendered accordingly. The finding indicated was not sustained by the evidence. *Held,* refusal of permission to amend and return of the finding constituted abuse of judicial discretion.

2. SAME   The petition prayed for cancellation of a contract to purchase oil and gas leases, on the ground of fraud. The answers of the sellers prayed for specific performance. *Held,* although the plaintiff failed to establish the specific ground for cancellation pleaded, the defendants praying specific performance were not entitled to equitable relief unless they had already performed what the contract required of them, or unless they were able and willing and offered to do so.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed May 8, 1920. Reversed.

*Altes H. Campbell,* of Iola, *James A. Allen,* and *John J. Jones,* both of Chanute, for the appellant.

*R. E. Cullison, Frank R. Forrest,* both of Iola, *J. T. Cooper,* of Fredonia, *T. A. Noftzger,* and *George W. Cox,* both of Wichita, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one by the purchaser of oil and gas leases, wells, pumping plants, tanks, and other equipment and supplies, to cancel the contract of purchase on the ground of fraud. The sellers prayed for specific performance. Specific performance was decreed, and the plaintiff appeals.

The contract embraced four groups of leases, severally owned by the Neosho company, a corporation, the Alamo company, a corporation, the Neoshola company, a partnership, and Lynch & Lieurance, a partnership, all of whom were named in the contract as sellers. The sale was negotiated and the contract was signed on their behalf by P. C. Irwin, described in the contract as "authorized agent coupled with an interest." At the trial he testified that, aside from being agent of the sellers, he had no interest except that he was a stockholder in the Neosho company. The gross consideration was $71,000, to be paid to Irwin on compliance by the sellers with the terms of the contract. $10,000 were to be deposited by the purchaser in escrow in the Northrup National Bank of Iola, which was done. The remainder was apportioned to the respective sellers, as follows: To the Neosho company, $7,500; to the Alamo company, $35,000; to the Neoshola company, $16,000; and to Lynch & Lieurance, $12,500. The contract covered the subjects of titles and assignments of leases, and contained the following stipulation:

"Said first party [the sellers] further agrees to have assignments of each and all of said leases duly made out by the respective owners thereof to said second party and deposit the same in Northrup National Bank of Iola, Kansas, within fifteen days from date hereof, to be delivered to said second party when the balance of money due for said leases is paid."

The owners of the groups of leases and Irwin were made defendants. The petition charged that Irwin misrepresented the daily production of the wells sold, and the production of other wells in the vicinity in the same field. The Neosho

company, the Alamo company, Lynch & Lieurance, and Irwin filed separate answers, denying fraud. As a basis for affirmative relief, the answers of these defendants pleaded performance of all the conditions of the contract on the part of the sellers. The replies denied every material allegation contained in the answers, "except such as are consistent with the allegations of the plaintiff's amended petition." All the partners of the Neoshola company but one joined in a general denial of the petition, and prayed to be dismissed, with costs. The nonjoining partner filed a general denial, and said she was entitled to such relief as the contract and transactions might show, but stated no facts constituting a cause of action for specific performance.

At the conclusion of the trial the court took the cause under consideration for the purpose of making findings of fact, which had been requested. Afterwards, and more than a month before the findings were filed, the plaintiff asked leave to strike from its replies the words, "except such as are consistent with the allegations of the plaintiff's amended petition," in order to conform to the theory on which the case was tried, and in furtherance of justice. The request was denied.

When findings of fact were returned, they were prefaced by the statement that they were made from the pleadings and the evidence. The court determined against the plaintiff the case made by the petition, by a finding of fact which will be adverted to later. Having done this, the court proceeded to determine the case for affirmative relief made by the answers of some of the defendants. The court found that within the stipulated time the defendants deposited with the bank assignments of leases for the properties described in the contract. It will appear later that the finding is not sustained by the evidence. Consequently, it must have been made, in part, from the pleadings, as a result of the form of the plaintiff's replies. At the trial the defendants who asked specific performance introduced evidence on which to base a claim that the plaintiff waived compliance on its part with the conditions of the contract. Waiver had not been pleaded at all. The defendants had alleged actual performance on their side, and nothing else; but the court found the facts re-

lating to the claimed waiver. On the findings described, the court rendered judgment in favor of Irwin and his principals for all the purchase money, Irwin and each seller having judgment for each seller's proportionate share.

The Neoshola property consisted of leases of 280 acres of land, two oil wells and their equipment, a pumping plant, two oil tanks, and some supplies. The consideration to be paid for the property was $16,000, and a share of the $10,000 deposited in the bank proportionate to the total consideration. The president of the bank was a witness for the defendants. Under searching cross-examination he divulged the fact that the Neoshola assignments never had been deposited for the plaintiff, although he endeavored to create a different impression. Besides this, the undisputed proof was that the leases had been sold to Hobson for $15,000. The company had sued Hobson for the price, and the petition stated the leases were on deposit with the Allen County State Bank, for him, in compliance with the contract of sale. That action was pending when the present action was tried. None of the Neoshola partners expressed ability or willingness to perform the contract with the plaintiff. Nevertheless, judgment was rendered in favor of Irwin and in favor of the Neoshola company, for that company's share of the consideration.

Manifestly, this decree cannot be allowed to stand. The replies were plainly intended as denials of the new matter pleaded in the answers. They had no place in the record unless they did this. They were treated as putting the new matter contained in the answers in issue, and the defendants undertook to prove performance of the contract as pleaded. The court recognized the fact that the issues had been enlarged on one side, at least, by making a finding on waiver, which the defendants had not pleaded, and which they were not entitled to prove unless pleaded. Under these circumstances, holding the plaintiff rigidly to the letter of its replies, refusing to permit amendment, and making a finding necessarily based on a strict interpretation of the replies because contrary to the evidence, constituted an abuse of judicial discretion. The Neoshola company chose not to turn over its property and demand the price, because it could not

do otherwise, and so precluded itself from receiving the benefit of a judgment such as the court entered. The question whether or not the plaintiff ought to be required, in equity, to accept a smaller block of leases than it had contracted for, was not considered.

The defendants say tender of performance on their part would have been useless, because the plaintiff had repudiated, and that, having failed to show cause for cancellation of the contract, the plaintiff cannot mend its hold. The plaintiff does not seek to mend its hold. It asked to be relieved from the obligation of the contract, because the contractual relation had been induced by false representations. Defeat would simply leave the plaintiff in the attitude of one who had failed to live up to a contract. Because it had failed to live up to its contract, the defendants sued the plaintiff. The defendants chose to sue for the price, for specific performance, instead of for damages resulting from breach of the contract. This suit was governed by the same principles as though the plaintiff had not moved at all. Tender was not necessary to put the plaintiff in default, if, before time for deposit of documents, it had declined to go further with the purchase, and so was in default. But the defendants could obtain no standing or relief in equity unless they had already performed what the contract required of them, or unless they were able and willing to do, and offered to do, what they ought in conscience to do, to entitle them to equitable relief.

There was abundant evidence to sustain the charge that the capacity of the wells was misrepresented. The court made no finding with reference to the making of the representations pleaded, or with reference to their truth or falsity, but found the plaintiff contracted on the strength of inspection and inquiries made by its president, C. P. Baxter, who represented it in negotiating the contract. A portion of the finding follows:

"The said C. P. Baxter, president of plaintiff company, in company with said P. C. Irwin during such negotiations between them, was shown over the leaseholds involved herein, by said P. C. Irwin, agent, and the wells, tanks, equipment and appliances pointed out to him, said C. P. Baxter, and he, said C. P. Baxter, inspected said leaseholds, wells, equipments and appliances, and he, said C. P. Baxter, in company with his superintendent, J. F. Markle, also examined and inspected the same, and likewise made personal inquiries of Earl Lee, who had been engaged in

pumping oil wells on the leasehold denominated the 'Chieftain leasehold,' involved in this action; and likewise he, said C. P. Baxter, made special inquiry of one J. T. Dowler, who resides near or adjoining the leaseholds in question, as to the character and number of wells drilled for oil on such lands and adjoining lands and then producing, and likewise he, said C. P. Baxter, procured from a number of the wells samples of the oil produced, for the ·purpose of testing the same, and had the same tested; and likewise he, the said C. P. Baxter, of his own motion, communicated with the railroad company to inform himself as to the amount of shipments of oil from wells on leaseholds in controversy; and after making examinations, inspections and inquiries as before stated, and as a result thereof, he, said Baxter, as president and for and on behalf of the plaintiff herein, entered into the contract set forth."

Baxter was unacquainted with the field in which the properties were situated. If he entered the field, he desired productive territory of sufficient size to warrant expenditure of the money required to do business there. A primary object of inspection was to ascertain the general features of the field, the location and extent of the productive area, the feasibility of operating it, and other facts of that kind. Irwin, Baxter, and Baxter's man, Markle, were together on a tour of inspection. Irwin testified as follows:

"We went out onto the forty acres first, that belonged to the Neosho Oil, Gas & Refining Company. We looked at the wells, and Baxter asked me to walk out as near as I could to the center of the lease. We couldn't pump the wells that day. We could not do anything that day that would tell from the examination what the wells were producing. They had nothing there to pump the wells with. From there we went back across the railroad track to the Neoshola property. . . . I do not suppose Baxter could tell that day from what he saw, what the wells were making. I couldn't tell what they were making from what I saw. We went from the Neoshola to the Alamo. There were three wells on the Alamo. We saw nobody there. No wells were pumping there, none were in shape to pump. There was nothing on the lease that could be seen by which a man could tell anything about the production of that property; there was just a showing around the wells; there wasn't any pumping. You couldn't tell anything about them anyway."

The Chieftain lease is not involved in this action, as the court stated. Baxter was negotiating for it, but after he had talked with Lee, he declined to purchase until he could make an actual pumping test of the capacity of the wells. Dowler was an elderly gentleman, a farmer who was picking greens in his pasture, and who went over to the group of men he saw about a

tank of the Chieftain. Tests of the quality of the oil obtained from a number of the wells had nothing whatever to do with the number of barrels of oil per day the wells would produce. The inquiry of the railroad company did not relate to the product of the wells in question, but to the shipment of oil from the entire field in the previous six months. Which of the wells in question were pumped and for how long, during the period inquired about, was not disclosed. At the time of the sale, none of the wells sold were pumping, or could be pumped, except those of the Neoshola company. Baxter did inquire of the Neoshola pumper what the wells were making, and the pumper refused to give the desired information.

The facts found furnished such flimsy support for the conclusion that Baxter purchased as the result of his own inspection and inquiry, that it may be the finding resulted from a misconception of the law.

The case was not one in which inspection revealed the truth, and the court did not hazard a finding that Baxter's inquiries led him to the truth. The mere fact that Baxter looked the properties over, and probed here and there for information regarding producing capacity of the wells, created no presumption that he did not rely on Irwin's representations, and did not preclude him from doing so. Irwin had known the field for years, and knew the history of each property. For the purpose of inducing Baxter to purchase, Irwin vouched for the actual daily capacity of each well. The evidence disclosed that the negotiations reached a stage at which Irwin urged haste in closing a contract. The question for the court was, whether Baxter determined to purchase anyhow, regardless of what Irwin said, or whether the specific and definite information which Irwin gave, and which nothing but a pumping test could verify, finally weighed with Baxter in making his decision to purchase. If he did rely on the representations, and they were false, and he was prejudiced, the contract should be rescinded. (*Foote v. Wilson*, 104 Kan. 191, 178 Pac. 430.) In the case cited the buyer was without experience. In the present case the buyer was an experienced oil man. The qualification of the buyer, however, does not affect the rule of law; it is simply a fact to be taken into consideration in determining whether or not he did rely on the representations.

The judgment of the district court is reversed. The cause is remanded with direction to grant a new trial; to permit the pleadings to be amended as the parties may desire, except that the Neoshola company is not entitled to claim specific performance; and to proceed in other respects in accordance with the views which have been expressed.